(No. 6330.   April 29, 1936.)

MRS. A. HOBSON, Appellant, v. SECURITY STATE BANK, a Corporation, and BEN DIEFENDORF, as Commissioner of Finance of the State of Idaho, Respondents.

[57 Pac. (2d) 685.]

A. H. Wilkie, for Appellant.

Mary Smith and W. Lloyd Adams, for Respondents.

AILSHIE, J.—May 22, 1925, appellant, a resident of Tooele, Utah, deposited $1,600 (as an interest bearing time deposit, at 5 per cent) in the Security State Bank of Ashton, Idaho. At the same time she also deposited for safekeeping in the bank the certificate of deposit (No. 4162) and other valuable papers and documents belonging to her. Of this amount of money $1,500 had been formerly deposited by appellant in 1920, also under a time certificate of deposit, while she was a resident of Fremont County in this state. At that time it was her custom to let the payment of interest go from one to three years before asking the bank for same. February 29, 1928, the bank was closed and taken over for liquidation by the Commissioner of Finance. May 1, 1930, appellant made a trip to Ashton for the purpose of withdrawing all or part of her deposit from the bank. At that time she received her first information of the closing of the bank. In order to protect her interests she filed a claim for money on deposit which was rejected by the Commissioner of Finance August 11, 1930.

Complaint was filed in the district court in November, 1930, alleging the deposit as above set forth and presentation of the claim and that the Commissioner of Finance failed to publish notice to creditors or mail notice to appellant, as provided by law in case of the closing of a bank. Trial was had before a jury in November, 1934, upon agreed statement of facts; no oral or other evidence was submitted. Motion for nonsuit was denied. A special verdict in the form of an interrogatory was submitted to the jury which they answered, signed and filed in favor of appellant. Counsel for respondent filed motion for judgment notwithstanding verdict, which was granted by the court. Judgment was thereupon entered that the special verdict be set aside, that plaintiff be not entitled to any relief and that defendants have judgment notwithstanding the verdict for costs.

Only one issue of fact is to be determined, viz., "Whether or not the agents of the Commissioner of Finance, in charge of the liquidation of the bank, mailed to the plaintiff, addressed to her at her place of residence, a copy of the notice to the creditors of the bank." The publishing and mailing of this notice is required by I. C. A., sec. 25–912 (1925 Sess. Laws, chap. 133, sec. 74). By the provisions of I. C. A., sec. 25–914 (1925 Sess. Laws, chap. 133, sec. 76), "All claims filed after the expiration of one year following the date fixed in the notice to creditors as the time for presentation of claims are not entitled to be allowed."

After overruling motion for nonsuit the court submitted to the jury the following interrogatory:

"Did the agents of the Commissioner of Finance, in charge of the liquidation of the Security State Bank of Ashton, mail or cause to be mailed, to the plaintiff a copy of the notice to creditors, addressed to the plaintiff at Tooele, Utah, with postage prepaid thereon?"

to which the jury answered, "No." Counsel for defendant thereupon moved the court for judgment in favor of the defendant, notwithstanding the verdict, on the ground that "the facts were insufficient to sustain the verdict." The court granted the motion and thereupon judgment was entered in favor of the defendant and denying plaintiff any relief.

This appeal involves the single question as to whether or not the court erred in disregarding the verdict of the jury and entering judgment in favor of the defendant. The correct decision on this point involves a review of the evidence on the issue of mailing notice.

The statutes governing the giving of notice to depositors of a closed bank and the allowance or rejection of claims of depositors, in so far as they are involved in this case, are as follows:

Sec. 25-912, I. C. A.:

''The commissioner shall cause notice to be given by advertisement in a newspaper of general circulation in the town or city in which said bank is situated, if there be one, and if not, then in such other newspaper published in the state of Idaho, as the commissioner shall designate, once a week for two successive weeks, calling on all persons who have claims against said bank to present the same to the commissioner or his duly authorized agent at a place to be specified in said notice, and to make sworn proof thereof, in form to be fixed by him, within the time specified in said notice, not less than ninety days from the date of the first publication thereof. A copy of such notice shall be mailed to all persons whose names appear as creditors upon the books of the bank.''

Sec. 25-913, I. C. A.:

''The commissioner shall reject or allow all claims in the whole or in part, and on each claim allowed shall designate the order of its priority. If a claim is rejected or an order of priority allowed lower than that claimed, notice shall be given the claimant personally or by registered mail, and an affidavit of the service of such notice, which shall be *prima facie* evidence thereof, filed in the office of the commissioner. The action of the commissioner shall be final unless an action be brought by the claimant against the bank in the proper court of the county where the bank is located within ninety days after such service to fix the amount of the claim and its order of priority or either. An appeal from the commissioner's allowance, either as to priority or amount, may also be taken to the district court of such county by any party in interest by serving on the commissioner notice thereof, stating the grounds of objection and filing the same in said court, within thirty days after allowance. Within five days

after such notice, the commissioner shall file in the court, and serve on the appellant, a copy of the claim and his reasons for allowance. The court or judge shall, after five days' notice of time and place of hearing on the issues thus made, hear the proof of the parties and enter judgment reversing, affirming or modifying the commissioner's action."

Sec. 25–914, I. C. A.:

" . . . . All claims filed after the expiration of one year following the date fixed in the notice to creditors as the time for presentation of claims are not entitled to be allowed or paid unless all other creditors' claims of any kind or character, except claims of shareholders, based on stock or assessments paid on stock, shall have been fully paid and discharged, and a surplus remains in the hands of the commissioner, and then only from such surplus."

It is admitted "that the commissioner of finance published notice to creditors of said bank as provided for by sec. 25–912, I. C. A." The decision of the case turns, however, on the question as to whether or not the commissioner *mailed or caused to be mailed to appellant a copy of the notice to creditors* as the same was published in the newspaper. It is conceded that if this was not done, plaintiff was entitled to recover; while on the other hand it is claimed by the Commissioner of Finance that if the notice was mailed, which he contends was done, the plaintiff could not recover for the reason that she did not present her claim within "one year following the date fixed in the notice to creditors as the time for presentation of claims."

The evidence as to the mailing of notice to appellant is variously argued and divergently construed by respective counsel. All the evidence there is on the subject is contained in the stipulated facts as to what plaintiff and the commissioner's stenographer would testify to if personally present in court, and which is as follows:

(Plaintiff) "That in May, Nineteen-twenty-five, at the time of making said deposit, her post office address and place of abode was Tooele, Utah, a small village about twenty miles from Salt Lake City, Utah; that she has lived there and received her mail at said post office regularly at all times since; that she was at her place of abode, at Tooele, Utah, at

all times during nineteen-twenty-eight; nineteen-twenty-nine, and nineteen-thirty, up until the time she visited Ashton, Idaho; that there is, and was during said time, a daily mail service at said postoffice, except on Sundays and legal holidays; that she did not receive notice that said bank was closed, or notice to creditors, or any other notice relating to said bank, through the mails, or in any other way, until she made a trip to Ashton, Idaho, about May first, Nineteen-thirty, for the purpose of withdrawing all or part of said deposit from said bank; and the first information she received regarding said bank failure was on her said trip to Ashton; . . . . that after making her said deposit in Nineteen-twenty-five . . . . plaintiff returned to her place of abode, at Tooele, Utah, and in accordance with her prior custom paid no further attention to her deposit in said bank, and heard nothing from said bank regarding it until her visit to Ashton Nineteen-thirty, as stated above.''

(Stenographer) ''That she was employed by the Commissioner of Finance of the State of Idaho, as clerk and stenographer in the Security State Bank of Ashton, Idaho, after it was taken charge of by the Commissioner of Finance in the spring of Nineteen-twenty-eight; that she was instructed by Mr. Horne, in charge, to mail out printed post cards containing notice to creditors of said bank, to all of the creditors at the post office addresses shown in the books of the bank, and she mailed out post cards to all of the creditors of said bank, including Mrs. Hobson, the plaintiff. She mailed out notices to all the creditors of said bank, including Mrs. Hobson, the plaintiff, at her address, at Tooele, Utah.''

It is true that the statute does not require that the *notice be received by the depositor* but only that it be ''mailed.'' The purpose, however, is to *give notice to the depositor* to present his claim and receipt of the notice would satisfy the statute. Satisfactory proof of mailing would likewise satisfy the statute although the notice was not received by the addressee.

Where it is shown that a letter has been properly addressed and deposited in the postoffice, postage prepaid, a presumption arises that it was delivered to the addressee in due course of mail transportation. (*Matlock v. Citizens*

*Nat. Bank,* 43 Ida. 214, 250 Pac. 648, 50 A. L. R. 1418 (and notes); *American Surety Co. of N. Y. v. Blake,* 54 Ida. 1, 27 Pac. (2d) 972, 91 A. L. R. 153 (and note); *Kubey v. Travelers' Protective Assn.,* 109 Wash. 453, 187 Pac. 335, 336.) There also arises a presumption that the letter *was not mailed* where the addressee testifies that such letter was not delivered and that he did not receive it. In *Matlock v. Citizens Nat. Bank, supra,* this court said:

"When a letter, properly addressed and stamped, is deposited in the postoffice, the presumption arises that such letter arrived in due course at its destination. However, when the failure of such a letter to arrive has been established, there conversely arises the presumption that it was never mailed." (See, also, *Renland v. First Nat. Bank,* 90 Mont. 424, 4 Pac. (2d) 488.)

█ It follows that when we have both these presumptions arising in the same case, as here, the failure of proof is chargeable to the party on whom the burden of proof rests. That will of course vary according to the nature of the case and the manner in which the issue arises. Here although not plead as a bar, mailing the notice is relied on by respondent as a justification for rejecting the claim and as a limitation of appellant's right of action and not as a defense to the merits of her cause of action. The burden of proving that plaintiff's action was barred by the running of the statute against the presentation and prosecution of her claim was on the defendant. (*Johnston v. Keefer,* 48 Ida. 42, 48, 280 Pac. 324; *San Diego Realty Co. v. Hill,* 168 Cal. 637, 143 Pac. 1021; *Wise v. Williams,* 72 Cal. 544, 14 Pac. 204; *White v. Century Gold Min. etc. Co.,* 28 Utah, 331, 78 Pac. 868; *Tate v. Rose,* 35 Utah, 229, 99 Pac. 1003.) However, in addition to the proof of mailing and denial of receipt of notice, there were certain circumstances disclosed which the jury was entitled to consider and weigh and on which they could well base their special verdict for plaintiff.

█ Plaintiff's testimony, that she did not receive the notice and knew nothing of the closing of the bank until she went to Ashton in May, 1930, for the purpose of withdrawing all or a part of her deposit, is corroborated by the circumstance itself, that she had not made any previous

demand for her money, had not filed any claim or disclosed any anxiety whatever about this deposit. It seems reasonable to suppose that had she received the postcard notice or had information from any other source of the closing of the bank, she would have taken some steps toward protecting her interest in the deposit. The deposit was a savings account which she had been allowing to run as much as two or three years at a time without collecting interest or taking a new certificate.

On the other hand evidence of the mailing of the postcard notice is in some degree weakened by the fact that the stenographer, while testifying that she mailed notice to all the depositors whose names appeared on the books of the bank, including plaintiff, discloses no special memory, recollection or knowledge of this particular depositor. (*Travelers' Ins. Co. v. Farmers' Mut. Fire Ins. Assn.,* 211 Iowa, 1051, 233 N. W. 153, 156; *Benge's Admr. v. Garrison,* 198 Ky. 447, 248 S. W. 1050.) In the first place a postcard notice is about the nearest approach to no notice that could be given. In the second place it would be easy to misplace or lose one of these cards in the process of preparing and mailing a large number of them; and furthermore, in taking a large number of names from a set of books it would be very easy to skip or overlook a name. The foregoing are circumstances which the jury had a right to consider and the evidence as submitted to them was sufficient to support their finding that no notice was mailed to appellant.

In passing upon our statute (sec. 7–224, I. C. A.) authorizing the entry of judgment "notwithstanding the verdict," this court has held:

"Section 7–224, *supra,* it will be observed, vests trial courts with power to grant motions for judgment *non obstante veredicto,* only in those cases where the moving party is entitled to a *directed verdict.* Under the rule in *Smith v. Marley, supra* [39 Ida. 779, 230 Pac. 769], a motion for a directed verdict admits the truth of the adversary's evidence and every inference of fact which may be legitimately drawn therefrom. Therefore, a motion for judgment *non obstante veredicto* also 'admits the truth of the adversary's evidence and every inference of fact which may be legitimately drawn

therefrom.' " (*Hendrix v. City of Twin Falls*, 54 Ida. 130, 138, 29 Pac. (2d) 352; see, also, *Griffin v. Clark*, 55 Ida. 364, 42 Pac. (2d) 297.)

It follows from what has been said that the trial court erred in disregarding the verdict of the jury and entering judgment for the defendant notwithstanding the verdict. The judgment will therefore be reversed and the cause is hereby remanded with directions to the trial court to enter judgment in favor of appellant on the verdict of the jury. Costs awarded to appellant.

Givens, C. J., and Budge, Morgan and Holden, JJ., concur.