## Meyers v. Brown-Forman Distillery Co.

Jan. 20, 1942.

Lawrence S. Grauman for appellant.

Ogden, Galphin, Tarrant & Street for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant was the plaintiff below and appellee was the defendant. We will refer to the parties according to their respective positions in the trial court.

On September 21, 1936, plaintiff and defendant entered into a written contract (to be effective as of September 1, 1936), by the terms of which, among other things, defendant employed plaintiff as a salesman for the state of Arkansas, his duties to consist only of soliciting orders in the state of Arkansas for the product (whisky) of defendant and transmitting such orders to the office of defendant at Louisville, Kentucky, for acceptance or rejection, and that defendant would pay plaintiff compensation for the services rendered under the contract to be computed on the following basis:

"(a)   Salary $360.00 per month, payable one-half on the fifteenth, and one-half on the last day of each month.

"(b)   Commission—At the end of any month in which the net sales of all brands of whisky credited to the salesman's account exceed an amount such that 5% thereof is exactly equal to the total amount of expenses (as hereinafter defined) chargeable to the salesman's territory, then he shall be paid a commission on such excess amount of net sales, which commission shall be based on the respective proportion of such excess amount that the quantities of various brands of whiskies bear to the entire amount of net sales at the following rates for each brand:

"Old Forester 5%
"Bottoms Up 5%
"Early Times 5%

"King of Kentucky 3 1/3%
"Kentucky Hill 5%
"Old Polk 5%
"Old Forman 4% up to 50 cases then 8%"

It was further provided that the contract may be terminated by either party at anytime immediately upon written notice to that effect to the other party. The contract also provided that plaintiff was not to receive commissions on whisky sold outside the state of Arkansas although he solicited such orders. Plaintiff entered the employment of defendant and continued therein until March 1, 1938, at which time he resigned and terminated his services with defendant.

Plaintiff, conceiving the idea that defendant had not paid him all the commissions to which he was entitled under the terms of the contract, sought a final settlement with defendant and employed the firm of Waldman, Petot and Company, certified public accountants of the city of Louisville, to make an audit of the records of the defendant with reference to the commissions earned under the contract. The accountants made an examination of the records of defendant and prepared a detailed written report of the account which showed that the sales made by plaintiff up to January 1, 1938, amounted to $533,-015.45 and the commission sheets on which plaintiff's commissions were based showed gross sales of $502,-966.15, a difference of $30,049.30. Plaintiff contends that under the terms of the contract he was entitled to commissions on this $30,049.30, which commission amounted to $1,422.69.

The defendant does not dispute the figures of the auditors, and it is conceded, that if plaintiff was entitled to a commission on the actual net sales he is entitled to the $1,422.69 claimed. The difference between the parties arises out of the fact that defendant computed plaintiff's commissions on a quart basis. The gross amount of the sales, computed upon the cost of quarts, was less than the selling price of the same amount of whisky bottled in pints and half-pints. It is defendant's contention that it was understood and agreed between plaintiff and defendant, and the contract so treated by them, that the commissions would be paid on a quart basis, while it is the contention of plaintiff that his commissions were to be based on the gross sales.

After the auditors made their findings and report plaintiff brought this action seeking to recover of defendant the sum of $1,422.69 as commissions based on the actual net sales from September, 1936, to January, 1938, and also sought to recover the further sum of $804.17 commission on a carload of whisky shipped to Louisiana, and also commissions on whisky sold by him during the months of January and February, 1938, on which no commissions at all had been paid, all items aggregating the sum of $4,708.96.

Defendant denied liability to plaintiff in any amount on any of the accounts sued on. With reference to the commissions claimed by plaintiff on sales made in the months of January and February, 1938, defendant pleaded that the written contract was terminated by defendant January 1, 1938, and by an oral agreement between plaintiff and defendant, plaintiff worked during the months of January and February, 1938, on a salary of $360 per month but was to receive no commissions on sales made after January 1, 1938, and that plaintiff had been paid said salary. Defendant further pleaded in its answer that it had paid the plaintiff all commissions due him in accordance with the provisions of the contract, and that plaintiff accepted each and all such monthly payments in full settlement and satisfaction of the amounts due him by reason of the terms and provisions of the contract. Defendant denied liability for commission on the carload of whisky shipped to Louisiana and pleaded that the contract specifically provided that plaintiff was not to be paid commissions on whisky sold outside the state of Arkansas.

Upon the issue joined by subsequent pleadings the case was transferred to the equity docket and referred to the court's commissioner upon the grounds that the suit was actually one for an accounting and that the accounts were so complicated that it would be difficult for a jury to understand them. After the proof was taken the commissioner made his report in which he found and recommended that plaintiff be allowed the sum of $1,422.69 as the balance of commissions due up to January 1, 1938. In reference to the carload of whisky shipped by defendant to Louisiana, the commissioner found that plaintiff was not entitled to a commission on this account. He also found that pursuant to an agreement and understanding plaintiff was working for a straight salary of

$360 per month for the months of January and February, 1938, which had been paid to him, and that he was not entitled to any commission on sales for those months. He further found that plaintiff was entitled to the sum of $83.65 as a balance on commissions on whisky sold in the state of Arkansas.

Both parties filed exceptions to the commissioner's report on all items and the chancellor sustained defendant's exceptions to the report allowing plaintiff $1,422.69 as a balance of unpaid commissions up to January, 1938, and overruled all other exceptions and entered judgment in favor of plaintiff for the sum of $83.65. Plaintiff has appealed.

We will first dispose of the question of commissions; that is, whether same should be computed on the amount of the sales including pints and half-pints, or upon a quart basis. Plaintiff contends that defendant was in error in computing the sales on the quart basis and that the invoice price on pints and half-pints should have been taken into consideration. Defendant contends, however, that (a) plaintiff was advised at the time of the execution of the contract and later that commissions would be computed on the quart basis and that plaintiff concurred in this construction of the contract, and, therefore, the parties contemporaneously construed the contract to mean that commissions should be computed upon the quart basis; and (b) that plaintiff knew that the commissions were being computed on the quart basis and that he is now estopped to claim that the computation should have been made on any other basis because defendant had the right to cancel the contract and it was deprived of this right since plaintiff chose to remain silent throughout the entire term of the agreement.

It appears that plaintiff had worked for defendant in Arkansas under a written agreement previous to the agreement in question. The present action is not based upon the prior agreement, since under the previous agreement commissions were computed on the quart basis irrespective of the number of cases of pints and half-pints sold by plaintiff in his territory. Edward J. Budde, assistant secretary of defendant, testified that after the execution of the contract, but he did not remember the exact date, on a Saturday evening in a Piggly-Wiggly store on Fourth Street, he explained to plaintiff how the present contract would work in relation to

the previous contract. He further said that after the execution of the contract it was discovered that it did not state specifically that commissions would be paid on the quart basis which necessitated an individual letter to be sent to all salesmen through the territory; that a letter dated November 27, 1936, was sent out by Vertner Smith, General Sales Manager, to all of defendant's salesmen, including plaintiff, advising them that "all commissions are based on the Louisville, Kentucky, f. o. b. quart basis, effective as of September 1, 1936, the date on which our new arrangement with you became effective." Plaintiff received the above letter and returned it with this notation:

"Dec. 7-36. Dear Vert—I have my *new* contract before me and there is nothing in it that states what you mentioned above—Sid."

The notation made by plaintiff on the above letter might indicate that he had not previously understood that by his new contract his commissions would be based on a quart basis, but the letter did so advise him, and he made no objections thereto other than to merely call to the attention of defendant the fact that he found no such provision in the new contract. He continued thereafter to receive and accept commission checks calculated on the quart basis and made no objections thereto until after he resigned his position with defendant more than one year thereafter. He claims that he assumed that his commissions were computed on the invoice price or "net sales" in accordance with the terms of the contract. After being advised definitely by the letter of November 27 that his commissions would be computed on the quart basis and without anything further being said concerning the matter, it is difficult to understand why he would have assumed that his commissions were being computed on the invoice price including pint and half-pint cases rather than on the quart basis. Furthermore, plaintiff does not deny the conversation testified to by the witness Budde, mentioned above, in which Budde told plaintiff that commissions would be computed on the quart basis.

Lloyd Rickert, an employee of defendant in the accounting department, testified that each time plaintiff came into the office he would check over his commission statements and that computations would be made on the calculator and that plaintiff was satisfied with the re-

sults. Mr. Rickert was asked and answered these questions:

"Q. Did he ever see you make those computations on the quart basis? A. Yes, he stood right next to my desk and would go over it,—he was more familiar with the prices than I was, and he would call them out to me."

Defendant insists that because of the foregoing facts plaintiff is now estopped to claim any additional commissions or that his commissions should be paid on the invoice price rather than the quart basis. It is insisted for plaintiff, however, that there is no plea of estoppel and for that reason no issue of estoppel is involved. It is to be noticed, however, in this connection, that the language of defendant's answer reads:

"Brown-Forman paid to the plaintiff all commissions due to him in accordance with the provisions of Section (3) (b) of said contract, and the plaintiff accepted each and all of such monthly payments in full settlement and satisfaction of the amounts due to him by reason of the terms and provisions of said contract."

We think the facts stated by this language are sufficient to constitute a plea of estoppel, although the pleader did not specifically state that by the reason of plaintiff's conduct he was estopped, which, of course, is more or less a legal conclusion. Be that as it may, and conceding, arguendo, that the plea of estoppel is defective, it must not be forgotten that this is an action for an accounting and in such cases the same strictness is not required as is usually required of pleadings in other actions. In 1 C. J. S., Accounting, Section 38, p. 677, the general rule is thus stated:

"The issues raised by the pleadings in an action for an accounting may be only those relating to the existence of the relationship which requires an accounting, and the statement that some balance is due plaintiff, other issues being raised by the account and the exceptions thereto, and not by the pleadings."

See, also, Clark v. Isaacs, 182 Ky. 391, 206 S. W. 606. Furthermore, the same issues with respect to the method of computation of commissions, plaintiff's acceptance of

commission checks based on a quart basis, and the question of estoppel, were raised and discussed in the exceptions to the commissioner's report. Under the facts and authorities, supra, it does not appear that the defect, if any, in the alleged plea of estoppel worked any prejudice to plaintiff.

Referring again to the evidence, plaintiff's evidence in most respects was contradictory to that produced for the defendant and is such that the mind might be left in doubt as to the truth of the matter. In such circumstances it is the settled rule that this court will not disturb the finding of fact by a chancellor unless we are convinced that such finding is contrary to the preponderance of the evidence. The facts and attendant circumstances all considered, we are unable to say that the evidence is insufficient to support the finding of the chancellor. The judgment is affirmed on this item.

This brings us to a consideration of the issue of whether plaintiff is entitled to recover the sum of $804.17, or any sum, as commission on the sale of the carload of whisky shipped to a purchaser in Louisiana. That transaction arose out of the following facts: J. L. Blackwell, of Vicksburg, Mississippi, who was a wholesale liquor distributor in Louisiana and who knew the plaintiff personally, went to Little Rock, Arkansas, to see plaintiff about buying a carload of defendant's whisky and after talking to Silbernagel and Company, liquor dealers in Little Rock, he then contacted the plaintiff. Plaintiff contacted his superior officers, Vertner Smith and W. J. Baker, the former being the General Sales Manager of defendant and the latter the Southern Sales Manager. Smith and Baker then directed plaintiff to have Blackwell to come to Louisville on a fixed date, and plaintiff and Blackwell went to Louisville and had a meeting with Smith and Baker and pursuant to negotiations for a carload of whisky it was arranged for the whisky to be invoiced and billed to Silbernagel and Company and that Blackwell would send the money to Silbernagel and Company and the latter would in turn send the money to defendant and the whisky would be shipped to Silbernagel and Company at Little Rock, Arkansas, and after the whisky got enroute it would be diverted to Louisiana. This plan was carried out. The whisky was originally consigned to Silbernagel and Company at Little Rock, but pursuant to arrangements and understand-

ing between all parties concerned the shipment was intercepted at Nashville, Tennessee, and diverted or re-routed to Louisiana. The reason for this subterfuge was that defendant had an exclusive distributorship in Louisiana and for that reason the whisky could not be shipped directly from the office of defendant in Louisville to Blackwell in Louisiana. There is no contention that this carload of whisky ever reached the state of Arkansas, nor was it intended by any of the parties that it should be shipped to Arkansas. There is no escape from the conclusion that in the final analysis this was a sale of whisky to Blackwell in Louisiana and not a sale to anyone in Arkansas. This appears to be the grounds upon which both the commissioner and the chancellor determined this question in favor of defendant.

It is argued for plaintiff that it was agreed and understood between the parties at the time the carload of whisky in question was sold that plaintiff would be paid a commission on the sale, and that this is evidence that defendant considered and so treated the sale as being a sale to Silbernagel and Company in Arkansas. Plaintiff testified that they agreed to pay him a commission on the whisky and he is corroborated by Mr. Blackwell and Mr. Baker. However, Vertner Smith, the General Sales Manager, testified that he had no such understanding with the plaintiff. Smith is corroborated by the contract and attendant circumstances. The defendant being a corporation, presumably, the contract was entered into pursuant to corporate authority. It appears unreasonable that the Sales Manager of the corporation would undertake to bind the corporation for the expenditure of a large sum of money contrary to the contract between the corporation and plaintiff. In the conflict of evidence we are unable to say that we are authorized to reverse both the commissioner and chancellor on their finding of fact involved in this issue. The rule that this court will not reverse a chancellor on a finding of fact when the evidence is in doubt, is even stronger when such finding is concurred in by both a commissioner and chancellor. In such cases this court will not reverse such finding unless it is shown by clear and convincing evidence that such finding is contrary to the weight of the evidence. We are constrained, therefore, to affirm the judgment on this item.

This brings us to the final issue of whether or not

the written contract of September, 1936, was terminated January 1, 1938, or whether plaintiff continued to work under that contract during the months of January and February, 1938. Gladys Seeders, a stenographer in the office of defendant, testified that on December 27, 1937, Claude T. Boone, a representative and employee of defendant, dictated a letter to her, a copy of which is filed with her evidence, which reads:

"In accordance with instructions issued by Mr. J. Gordon Baquie, your Divisional Manager, we are enclosing herewith formal notice of the termination of your present contract.

"We are preparing a new contract form and as soon as it is received from the printer, same will be forthcoming."

Miss Seeders testified that she deposited the letter in the United States mail addressed to plaintiff in Arkansas at the address where he received his mail. Plaintiff denied that he received the letter. According to the weight of authority, the rule is that when it is shown that a letter has been properly mailed to a person, the presumption is that the addressee received such letter, and if he denies having received same such denial does not entirely destroy such presumption, and it may be considered as evidence by the court or jury trying the case. Sullivan v. Kuykendall, 82 Ky. 483, 56 Am. Rep. 901; Annotations 91 A. L. R. 161; 21 R. C. L. 764, 768.

There is also evidence to the effect that representatives and agents of defendant informed plaintiff in the late part of December, 1937, that the contracts of all their salesmen, which of course included plaintiff's contract, would be terminated January 1, 1938, and new contracts would be made. Also, one witness testified that he told plaintiff in the early part of January, 1938, that the old contracts would be terminated and new ones made to be effective as of January 1, 1938. Plaintiff admits that such discussions were had between him and representatives of defendant, but insists that no new contract had actually been made, and it appears that he assumed that the old contract would remain in force until such new contract had been actually made and delivered to him. Another circumstance argued in behalf of plaintiff is that when he received the new contract in the latter part of February, 1938, which provided for a straight salary of

$360 per month but no commissions, he then came to the office of defendant and resigned his position. It may be true that plaintiff assumed that he was working under the old contract during the months of January and February, 1938, but there is considerable evidence to the effect that he was notified that the old contract would be terminated January 1, 1938, and a new one would be made effective as of January 1, 1938. While the evidence is conflicting, there is evidence to the effect that plaintiff's old contract was terminated as of January 1, 1938, and he had notice thereof; or, he continued to work during the months of January and February with the knowledge that a new contract would be made effective as of January 1. In the latter event he took his chance on the terms of the new contract.

The commissioner and chancellor both found the evidence sufficient to sustain defendant's plea that plaintiff's old contract was terminated January 1, 1938, and that he was not entitled to commission on whisky sold thereafter. We think the evidence sufficient to sustain the chancellor and commissioner on this issue.

Wherefore, the judgment is affirmed.