[Civ. No. 16530.   First Dist., Div. One.   Apr. 26, 1956.]

RAYMOND H. JENSEN et al., Respondents, v. TRADERS AND GENERAL INSURANCE COMPANY (a Corporation), Appellant.

Partridge, O'Connell & Whitney and Wallace O'Connell for Appellant.

Nichols, Richard, Allard & Williams, Jesse Nichols, Edward M. Digardi, Anthony R. Brookman and Sheridan, Hoffman & Mendel for Respondents.

WOOD (Fred B.), J.—Plaintiffs Raymond Jensen, Dorothy Jensen and Marian Morrow recovered judgment against plaintiff Vincent (Jim) Di Matteo for injuries sustained in an automobile accident and then joined with Di Matteo in bringing the present action against his insurance carrier, Traders and General Insurance Company, Di Matteo claiming a right to be reimbursed for the cost to him of defending the first action. Plaintiffs recovered and the insurance company has appealed.

(1) *Did the trial court err in denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict? No.*

Defendant claims it canceled the policy prior to the accident.[1] It adduced evidence tending to show that it mailed notices of cancellation to the policyholders (John Di Matteo and his son Jim) on August 10, 1951. The person in charge of its cancellation department did not specifically recall the handling of the papers in question. Based upon defendant's office system and practice, she deduced from carbon copies of cancellation notices to the Di Matteos (which bore her initials) and from two post office receipts in the defendant's possession, that the originals of these two notices were mailed in sealed envelopes properly addressed, with sufficient postage affixed. The dates stamped on the postal receipts were indistinct as to the year. She admitted "it isn't very clear" from the postal receipts whether the notices were sent out in 1950, 1951, 1952, or 1953. As to one of them, she said

---

[1] The cancellation clause, in section 23 of the "Conditions" expressed in the policy, read as follows:

"This policy may be canceled by the named insured by surrender thereof or by mailing to the company written notice stating when thereafter such cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing."

"You can see a faint part of the '1.' I hardly think that would be a 2 or 3," but added that what she thought might be a part of a "1" was no bigger in size than a period. As to the date on the other postal receipt, she said "this one you can't read at all." These postal receipts did not indicate the nature of the contents of the envelopes. A postal official who described the use and purpose of such a receipt explained it is not a receipt for registered mail; it serves solely as an acknowledgment of the receipt into the United States mail of a piece of ordinary mail addressed to a person named on the receipt.

■ This was competent evidence of mailing[2] but not the only evidence on that subject. Plaintiffs John and Jim Di Matteo testified positively that no cancellation notice was received and that they had no inkling of any cancellation until three months later, when the accident occurred and they reported it to the insurance company. A circumstance tending inferentially to support their testimony is the fact that the Di Matteos sought no new insurance and continued to make the monthly payments on their car to the auto dealer who sold it to them on a conditional sales contract which included an item by way of premium upon the policy in each monthly installment. There was the added circumstance that the father, who made the down payment on the car, signed the sales contract and joined in the application for the policy, would not allow the son, who was under 21, to drive without insurance coverage.

This furnishes a substantial basis for an inference that notices of cancellation were not mailed, and thus presented a conflict in the evidence to be weighed and resolved by the jury. "If proof that a properly addressed and stamped letter was posted gives rise to a presumption that it was received in due course (1 Wig. Ev. § 95), so proof that no letter was received warrants a finding that it was never posted. If this plaintiff's testimony denying the receipt of the letter was believed, the jury would be warranted in going further and finding that the letter was not posted." (*Wilson* v. *Frank-*

[2]See §§ 1953e-1953h, particularly § 1953f, Code of Civil Procedure. As to the purpose of these sections, known as the Uniform Business Records as Evidence Act, see *Loper* v. *Morrison*, 23 Cal.2d 600, 607-609 [145 P.2d 1]. Evidence thus produced is for the trier of the facts to weigh; e.g., the fact that a business record may be self-serving does not make it inadmissible. As said in *Gallup* v. *Sparks-Mundo Engineering Co.*, 43 Cal.2d 1 [271 P.2d 34], "[t]his fact was one for the jury to consider in weighing its effect." (P. 8.)

*fort Marine, Acc. & Plate Glass Ins. Co.* (1914), 77 N.H. 344 [91 A. 913, 914].) See also *Calkins* v. *Vaughan* (1927), 217 Ala. 56 [114 So. 570, 574]; *Matlock* v. *Citizens' Nat. Bank* (1926), 43 Idaho 214 [250 P. 648, 649, 50 A.L.R. 1418]; *Hobson* v. *Security State Bank* (1936), 56 Idaho 601 [57 P.2d 685, 688]; *Meyers* v. *Brown-Forman Distillery Co.* (1942), 289 Ky. 185 [158 S.W.2d 407, 412]; *Keeling* v. *Travelers Ins. Co., Hartford, Conn.* (1937), 180 Okla. 99 [67 P.2d 944, 945]; *Keller* v. *Provident Life & Acc. Ins. Co.* (1948), 213 S.C. 339 [49 S.E.2d 577, 581]; *Cisco Mut. Life Ins. Assn.* v. *Ferguson* (Tex.Civ.App., 1928), 8 S.W.2d 546, 547-548; *Texas Mut. Life Ins. Assn.* v. *Burns* (Tex.Civ. App., 1936), 92 S.W.2d 469, 470; *Border State Life Ins. Co.* v. *Noble* (Tex.Civ.App., 1940), 138 S.W.2d 119, 122; IX Wigmore on Evidence, 3d ed., pp. 432-433, § 2519.) In New York this principle has been applied in a case in which the testimony of mailing came from an interested witness (*Kingsland Land Co.* v. *Newman* (1896), 1 App.Div. 1 [36 N.Y.S. 960]); rejected in a case in which the evidence of mailing came from a disinterested witness (a notary's certificate of protest) and was controverted merely by the addressee's denial of receipt (*Trust & Guarantee Co.* v. *Barnhardt* (1936), 270 N.Y. 350 [1 N.E.2d 459, 461-462], criticised in IX Wigmore on Evidence, *supra*, at pp. 433-434, note 4). The evidence in our case meets all of the requirements of the rule, even as limited in New York.

This is a sufficient answer to defendant's claim that the trial court erred in denying the motions for a directed verdict and for judgment notwithstanding the verdict. In arriving at this conclusion we have not had occasion to decide the question whether, under the contract here involved, a proper mailing, if proven, would or would not effect a cancellation if nonreceipt of the notice were also proven. Upon that question we express no opinion.

(2) *Defendant questions the following instruction, given at plaintiff's request:* ''If you find from the evidence that the policy of insurance issued to Vincent James Di Matteo was paid for by a payment made to defendant Traders and General Insurance Company's agent Joseph P. Lotz,[3] then,

---

[3]There was substantial evidence that the full amount of the premium on this policy for the year for which issued (April 19, 1951, to April 19, 1952) had been paid to defendant's agent Lotz by Moschetti & Vader, the firm that sold the car to the Di Matteos and obtained the policy for them.

in order to effect a cancellation of said policy, pursuant to its terms, it was necessary that defendant Traders and General Insurance Company refund the premium, 'at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective.' *A failure under such circumstances to refund the premium would invalidate the attempted cancellation.*"[4]   (Emphasis added.)

This instruction was erroneous, the policy did not predicate the effectiveness of a cancellation upon any such condition. The provision in respect to payment by the insured to the insurer of the unearned portion of the premium the latter had paid, immediately followed the cancellation clause (quoted in the footnote on page 163 of this opinion) and read as follows:

"If the named insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure.  If the company cancels, earned premiums shall be computed pro rata.  Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective.  The company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the named insured." (Second paragraph of section 23 of "Conditions" of the policy.)

A mere reading of this provision (premium adjustment "may be made at the time cancellation is effected" and "if not then made" it shall be made "as soon as practicable after cancellation becomes effective") demonstrates that cancellation is not dependent for its effectiveness upon payment of the refund.   Also, it follows a cancellation clause which is complete in itself, one which declares that the notice of cancellation shall state "when not less than five days thereafter [after mailing] such cancellation shall be effective" and that [if actually and properly mailed] "the effective date and hour of cancellation stated in the notice shall become the end of the policy period."   ██  The duty to refund is an obligation that springs into being when the company cancels the policy.  Delay in performing, or failure to per-

---

[4]Defendant requested but the court refused an instruction to the effect that cancellation was not dependent, for its effectiveness, upon the return to the policyholder of the amount of the unearned portion, if any, of the premium, if any, that had been paid.

form, this duty does not of itself render cancellation ineffective.

A somewhat similar return of unearned premium clause was similarly interpreted by our Supreme Court in *Mangrum & Otter* v. *Law Union & Rock Ins. Co.*, 172 Cal. 497 [157 P. 239, Ann.Cas. 1917B 907, L.R.A. 1916F 440]. The rationale of that decision applies here.

Clauses practically identical to the return of unearned premium clause here involved were similarly interpreted in the following cases: *Genone* v. *Citizens Ins. Co. of New Jersey* (1950), 207 Ga. 83 [60 S.E.2d 125, 128-129] ; *Parks* v. *Lumbermens Mut. Cas. Co.* (1945), 327 Ill.App. 356 [64 N.E.2d 210, 212] ; *Leslie* v. *Standard Acc. Ins. Co.* (1945), 327 Ill. App. 343 [64 N.E.2d 391, 393] ; *American Fire & Casualty Co.* v. *Combs* (1954), —— Ky. —— [273 S.W.2d 37, 38-39] ; *Gibbons* v. *Kelly* (1951), 156 Ohio 163 [101 N.E.2d 497, 498-499] ; *Medford* v. *Pacific Nat. Fire Ins. Co.* (1950), 189 Ore. 617 [219 P.2d 142, 144, 151, 16 A.L.R.2d 1181] ; *Turney* v. *Allstate Ins. Co.* (1950), 167 Pa.Super. 175 [74 A.2d 730] ; *Wallace* v. *State Farm Mut. Automobile Ins. Co.* (1949), 187 Tenn. 692 [216 S.W.2d 697] ; *Putman* v. *Deinhamer* (1955), 270 Wis. 157 [70 N.W.2d 652, 655].

The cases upon which plaintiffs rely for their interpretation involve, principally, clauses that differ significantly from those here involved; a few are out of state cases that represent the minority view. There is no need to list them here. Most of the cases, pro and con, which interpret policy provisions that are the same as or that closely resemble those here involved, are collected in 16 A.L.R.2d 1200, section 5, at 1204, and in A.L.R.2d Supplement Service for 1948-1956, page 900.

█ The erroneous instruction under discussion cannot have failed to be prejudicial. Accordingly, the judgment must be reversed. This conclusion renders it unnecessary to consider other points discussed by the parties upon this appeal.

The order denying the motion for judgment notwithstanding the verdict is affirmed. The judgment is reversed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied May 25, 1956, and respondents' petition for a hearing by the Supreme Court was denied June 20, 1956. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.