Edgar J. HARTSFIELD, Linda Hartsfield, Fae Davidson, Doyle Van Matre, Fae Davidson as Guardian ad litem of Steven Davidson, and Doyle Van Matre, as Guardian ad litem of Pamela McCarroll, Appellants,

v.

CAROLINA CASUALTY INSURANCE COMPANY, a corporation, Appellee.

Nos. 604, 605.

Supreme Court of Alaska.

Feb. 25, 1966.

George F. Boney, Burr, Boney & Pease, Anchorage, for appellants.

Robert C. Erwin, Hughes, Thorsness & Lowe, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

This appeal involves the question of whether receipt of a notice of cancellation by the insured is a prerequisite to an effective cancellation of an automobile public liability insurance policy. The trial court held that under the terms of the policy receipt by the insured of notice of cancella-

tion was not required. We are of the opinion that the trial court's construction of the policy was correct and hold that under the terms of the cancellation clause in question the mailing of a notice of cancellation to the insured is the only prerequisite to an effective cancellation of the policy.

The record before us shows that appellee Carolina Casualty Insurance Company issued an automobile liability policy to appellant Edgar J. Hartsfield. Paragraph twenty-four of the "Conditions" section of the policy contains the cancellation clause which reads in part:

> This policy may be canceled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation shall be effective. *The policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.* The time of the surrender or the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the Company shall

be equivalent to mailing.[1] (Emphasis supplied.)

This cancellation clause, which has been characterized as a "standard form" cancellation clause,[2] has received considerable judicial scrutiny. The majority of jurisdictions which have considered the standard clause have determined that receipt by the insured is not a condition precedent to cancellation.[3]

■ Appellants argue that the cancellation clause is ambiguous, that an ambiguity should be construed against the insurer and most favorably to the insured, and therefore the cancellation clause should be construed as requiring receipt of the notice of cancellation as a condition precedent to cancellation of the policy.[4] We are of the opinion that the cancellation clause in question is clear and unambiguous.[5] It provides that both the insured and the insurer may cancel the policy either by mailing of notice of cancellation or by delivery of notice of cancellation. The clause in question specifically provides that mailing by the insurer of at least a ten day notice of cancellation to the insured at his address shown in the policy "shall be sufficient proof of notice."

As we noted previously, the majority of the jurisdictions which have passed upon this issue have concluded that the standard cancellation clause is unambiguous and have

---

1. Appellant Edgar Hartsfield's address as shown in the policy was "1519 Kepner, Anchorage, Alaska."

2. Annot., 64 A.L.R.2d 982, 988–989 (1959).

3. It is stated in the annotation, supra note 2, at 1000 that:
 Where the so-called 'standard cancellation clause' has been involved, a decided conflict in the decisions exists regarding the question whether actual receipt of the cancellation notice mailed by the insurer constitutes a prerequisite to the cancellation of the insurance. A majority of the decisions have held that the actual receipt of the cancellation notice by the insured is not a condition precedent to the cancellation of the insurance by the insurer, provided the cancellation notice itself contains a

fixed date on which the cancellation is to become effective, but an opposite result has been reached in some cases under statutes requiring that the insured be given notice of a specified number of days.

4. The trial court held that the cancellation clause was not ambiguous.

5. The following authorities have reached a similar conclusion in regard to the lack of ambiguity in the standard clause: Boyle v. Inter Ins. Exch., 335 Ill.App. 386, 389, 82 N.E.2d 179, 180–181 (1948); Midwestern Ins. Co. v. Cathey, 262 P. 2d 434, 436 (Okl.1953); Medford v. Pacific Nat'l Fire Ins. Co., 189 Or. 617, 219 P.2d 142, 148, 222 P.2d 407, 16 A.L.R.2d 1181 (1950); Aetna Ins. Co. v. Aviritt, 199 S.W.2d 662, 665 (Tex.Civ.App.1947).

sustained its validity.[6] Typical of these authorities is Midwestern Ins. Co. v. Cathey [7] where the court stated:

There is no ambiguity in the language of the policy as contained in the cancellation provision. Under the very strictest construction of the policy, the * * * language is not of doubtful meaning.[8]

 In upholding the determination of the trial court that the standard cancellation clause does not require receipt of the notice of cancellation by the insured, we reject appellants' contention that such a construction is contrary to "the clear public policy of the State of Alaska." [9] In regard to a similar contention, the court in State Farm Mut. Auto. Ins. Co. v. Perrin [10] said:

The issue of public policy raised by appellants has frequently been the subject of consideration by the courts. The overwhelming weight of authority is adverse to appellants' position. See Gendron v. Calvert Fire Insurance Co., 47 N.M. 348, 143 P.2d 462, 466, 149 A. L.R. 1310 (1943) ; Trinity Universal Ins. Co. v. Willrich, 13 Wash.2d 263, 124 P.2d 950, 955, 142 A.L.R. 1 (and cases cited in the A.L.R. annotation) (1942) ; State Farm Mutual Automobile Ins. Co. v. Chaney, 10 Cir. 1959, 272 F.2d 20 ; Boyle v. Inter Ins. Exchange of Chicago Motor Club, 335 Ill.App. 386, 82 N.E.2d 179 (1948).[11]

6. See Annot., 64 A.L.R.2d, supra note 2, at 1000–1002. The annotation collects cases from twenty-four jurisdictions holding that the standard cancellation clause is unambiguous and that mailing of notice rather than receipt of notice of cancellation is sufficient under this type clause.

7. Supra note 5, 262 P.2d at 436.

8. See also State Farm Mut. Auto. Ins. Co. v. Perrin, 331 F.2d 565, 568 (7th Cir. 1964) ; Wright v. Grain Dealers Nat'l Mut. Fire Ins. Co., 186 F.2d 956, 958–959 (4th Cir. 1950) ; Jensen v. Traders & Gen. Ins. Co., 52 Cal.2d 786, 345 P.2d 1, 3 (1959) ; Service Fire Ins. Co. v. Markey, 83 So.2d 855, 856 (Fla.1955) ; County of Williamson v. Standard Acc. Ins. Co., 32 Ill.App.2d 363, 178 N.E.2d 149, 150 (1961).

9. Appellants argue that any construction other than the one requiring receipt of actual notice of cancellation by the insured would be contrary to and frustrate the public policy of the State of Alaska as embodied in our Motor Vehicle Safety Responsibility Act.
In this regard, appellants argue that the subject policy was obtained by appellant Edgar Hartsfield in order to comply with the Motor Vehicle Responsibility Act. AS 28.20.010 of this act provides:
Declaration of purpose. The legislature is concerned over the rising toll of motor vehicle accidents and the suffering and loss inflicted by them. The legislature determines that it is a matter of grave concern that motorists be financially responsible for their negligent acts so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them. The legislature finds and declares that the public interest can best be served by the requirements that the operator of a motor vehicle involved in an accident respond for damages and show proof of financial ability to respond for damages in future accidents as a prerequisite to his exercise of the privilege of operating a motor vehicle in the state.
Appellants further argue that since "No laymen reading such a provision should be presumed to know that the policy could be cancelled without actual notice to him" the standard cancellation clause is contrary to the public policy expressed in AS 28.20.010.

10. Supra note 8, 331 F.2d at 568.

11. See also Jensen v. Traders & Gen. Ins. Co., supra note 8, 345 P.2d at 5–8. After discussing the various public policy arguments advanced, the court in Jensen stated at 8:
If it is determined that a need exists for amendment of section 651 of the Insurance Code to correct supposed abuses, the Legislature is the proper forum for the determination of the means to be adopted, not the courts. In its deliberations, the Legislature can more broadly study the public welfare. The state, through its Insurance Commission, can be heard, as can the varied interests of other segments of the public and affected industries. Such

We hold that the standard cancellation clause in question does not contravene the Alaska Motor Vehicle Safety Responsibility Act and that it is not against public policy.[12]

Appellants additionally urge that the trial court erred in granting summary judgment to appellee and in refusing to grant summary judgment in appellants' favor.[13] Appellants' main contention in regard to the lower court's granting of summary judgment in appellee's favor is that there existed a genuine issue as to a material fact.[14] Our conclusion after study of the record, and what we consider to be the applicable law, is that the record discloses the existence of a genuine issue as to a material fact and that it was therefore error to grant summary judgment to appellee under the circumstances.

In opposition to appellee's motion for summary judgment, appellants Edgar and Linda Hartsfield filed affidavits stating that they never had received any notice of cancellation of the subject insurance policy.[15]

On this state of the record the trial court concluded that appellants could not prove that appellee did not mail notice of cancellation and, therefore, determined that "this is a question of law and not of fact." [16] We disagree and hold that the denial of receipt of the notice of cancellation raised a genuine issue as to a material

---

sources of information are not available to the judiciary.

12. In reaching this conclusion, we decline to follow the decisions of the courts of Iowa, Kansas, Michigan and Minnesota which appellants have relied upon. On the grounds of either public policy, or ambiguity, the courts of these states have construed the standard cancellation clause as requiring receipt of notice of cancellation by the insured. See: Selken v. Northland Ins. Co., 249 Iowa 1046, 90 N.W.2d 29, 388 (1958); Koehn v. Central Nat'l Ins. Co., 187 Kan. 192, 354 P.2d 352 (1960); DeHaan v. Marvin, 331 Mich. 231, 49 N.W.2d 148 (1951); Donarski v. Lardy, 251 Minn. 358, 88 N.W.2d 7 (1958).

13. Appellee Carolina Casualty Insurance Co. initially brought this action for declaratory relief seeking a determination that it had no obligation to either defend or pay under the subject policy since it had effectively cancelled the policy by mailing notice to appellant Edgar Hartsfield. Appellants Edgar and Linda Hartsfield counterclaimed seeking judgment against appellee in the amount of $22,-900.00 plus costs (which sum represents the judgment obtained by the other appellants herein against appellants Hartsfield for personal injuries sustained in an automobile accident in which appellant Linda Hartsfield was the operator of the vehicle). Appellants Davidson and Van Matre also counterclaimed against appellee seeking payment under the subject policy of the judgment they had obtained against the Hartsfields.

14. In regard to the trial court's refusal to grant them summary judgment, appellants primarily base their assertion of error on the ground that the standard cancellation clause required receipt by the insured. In view of our construction of this clause we conclude that on the record before us the trial court correctly denied appellants' motion for summary judgment.

15. Edgar Hartsfield's affidavit reads in part:
 At no time between August 17, 1962, and July 19, 1963, was I ever notified that the policy had been or was to be cancelled by anyone including the Arctic Automobile Club, Insurance, Inc., Kenneth I. Toby Agency, Lewis E. Simpson, or the Carolina Casualty Insurance Company either by mail or otherwise.
 In support of its motion for summary judgment appellee filed affidavits of Frederick Schwier, manager of Kenneth I. Tobey, Inc., (appellee's general agent in Seattle, Washington) and Grace McConnell, office manager of Insurance, Inc. of Anchorage, Alaska (local agent appointed by Kenneth I. Tobey, Inc.) to the effect that notice of cancellation was sent appellant Edgar J. Hartsfield, 1519 Kepner Road, Anchorage, Alaska, on October 24, 1962, and that the cancellation was to be effective as of November 5, 1962. Grace McConnell's first affidavit stated that notice was sent to 1519 Temper Road, Anchorage, Alaska.

16. The trial court characterized appellants' affidavits of non-receipt of notice as a "bald assertion."

fact which precluded the granting of summary judgment.[17]

As to whether or not the mere denial of receipt by the addressee raises a factual issue as to mailing, we are of the opinion that the better view is that such a denial creates a material fact issue for resolution by the trier of fact. In regard to this issue, Dean Wigmore states:[18]

> Whether the letter was *mailed,* becomes often the issue under the substantive law * * * here the actual receipt of the letter becomes immaterial; the mailing suffices. But suppose the addressee testifies in *denial* of the *receipt?* If this denial be believed, then is not the non-arrival of the letter some evidence that it was never mailed? The presumption above rests upon the supposed uniform efficiency of the postal service in delivering letters duly stamped, addressed, and mailed into its custody; if therefore the efficiency is operating, does not the non-arrival of an alleged letter indicate that such a letter was never given into the postal custody? Add to this, that the testimony to mailing comes usually from the mouth of persons who are vitally self-interested in proving the fact of mailing, * * *

If therefore the addressee's testimony (also an interested witness) be believed, the non-arrival of such a letter is some evidence that no such letter was mailed; in short, it becomes essentially a question which testimony the jury will believe; therefore the case may go to the jury on that issue. This is the correct view, accepted by many Courts; some of them, however, limit such a ruling to cases where the testimony to mailing comes from an interested witness; some of them ask for something circumstantial in addition to the addressee's mere denial.

■ We adopt the view of those courts [19] which hold that the denial of receipt rebuts a prima facie case of mailing and creates an issue of fact for resolution by the trier of fact.[20]

■ We consider it appropriate to mention one other issue which appellants raise in this appeal. Appellants contend that the notice of cancellation was insufficient for the reason that no premium refund was ever returned to the insured. As to return of unearned premium upon cancellation, the policy in question provided:

> If the named insured cancels, earned premiums shall be computed in accord-

---

17. In Ransom v. Haner, 362 P.2d 282, 289–290 (Alaska 1961), this court stated:
The purpose of summary judgment, authorized by Rule 56, Federal Rules of Civil Procedure is to allow the court to dispose summarily of a case where the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Its purpose is not to cut off litigants from their right to trial by jury on genuine issues of fact. Even though there may be considerable doubt as to the existence of a claim or defense, if it appears to be in good faith the party asserting it is entitled to a trial and an opportunity to examine the case or defense of his adversary in the usual course.
See also 6 Moore, Federal Practice § 56.-15, at 2281–83 (2d ed. 1965).

18. IX Wigmore, Evidence § 2519, at 432–33 (3d ed. 1940).

19. In adopting the view we deem it unnecessary to limit our ruling to instances where the evidence of mailing is adduced from interested witnesses or require additional evidence in regard to the addressee's mere denial.
It should be noted that our decision on this question is not intended as any indication on our part as to which party should ultimately prevail on this issue.

20. Traders & Gen. Ins. Co. v. Mallitz, 315 F.2d 171, 174 (5th Cir. 1963); Allied Am. Mut. Fire Ins. Co. v. Paige, 143 A.2d 508, 510 (D.C.Mun.App.1958); Jensen v. Traders & Gen. Ins. Co., 141 Cal.App.2d 162, 296 P.2d 434, 436–437 (1956); Meyers v. Brown-Forman Distillery Co., 289 Ky. 185, 158 S.W.2d 407, 412 (1942), and authorities cited by Wigmore in support of the quoted text.

ance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

In Queen Insurance Co. of America v. Nalley Discount Co.,[21] the court in construing a similar clause said:

As to return of unearned premiums upon cancellation of the policy by the company, the policy, as quoted above, provides that premium adjustments may be made at the time cancellation is effected or as soon as practicable thereafter, but that payment or tender

of unearned premiums is not a condition of cancellation. The parties having agreed to these provisions, failure of the insurer to return the unearned premiums did not prevent cancellation from becoming effective. Genone v. Citizens Ins. Co. of New Jersey, 207 Ga. 83, 91, 60 S.E.2d 125, supra.[22]

In light of the above quoted provision of the policy and the authorities referred to, we conclude that a return of unearned premiums is not a condition precedent to cancellation of the policy in question.[23]

For the foregoing reasons the trial court's denial of appellant's motion for summary judgment is affirmed, the trial court's entry of summary judgment in appellee's favor is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

21. 215 Ga. 837, 114 S.E.2d 21, 23 (1960).

22. See also Creaghe v. Iowa Home Mut. Cas. Co., 323 F.2d 981, 983 (10th Cir. 1963); Marchessault v. National Grange Mut. Liab. Co., 229 F.2d 698, 701 (2d Cir. 1956); Annot., 16 A.L.R.2d 1200, 1205 (1951), where it is stated:
Under this clause it has been consistently held that a refund or tender

of the unearned premium is not a condition precedent to effective cancellation.

23. It is disputed whether or not any refund is owed to appellant Edgar Hartsfield. We make no determination as to this issue since it is unnecessary to the disposition of this appeal.