### Union School Furniture Co. v. Mason.

1. The account books of a commercial house, presumably kept in the usual way, afford some evidence of the nonpayment of a claim, where no credit or evidence of payment appears on such books.
2. An agent to make collections is not authorized to accept in payment of his principal's claim an account against himself, and so doing does not bind his principal.
3. Where it is claimed that the amount so attempted to be adjusted was afterwards fully accounted for and paid to his principal by such agent, by the transfer of school bonds or other property, it should affirmatively appear that such bonds or property were transferred under such circumstances as would either justify the jury in finding that the transfer was intended in fact as a payment, or the court in holding that the legal effect of such transfer was a payment. *Held*, that, under the evidence in this case, the trial court was not justified in directing a verdict for the defendant.

(Syllabus by the Court. Opinion filed June 18, 1892.)

Appeal from circuit court, Aurora county.   Hon. D. HANEY, Judge.

·Action to recover for goods sold and delivered.   Defendant answered, alleging payment to plaintiffs' agent.   Upon motion the court directed a verdict for defendant.   Plaintiffs appeal.   Reversed.

The facts are stated in the opinion.

· *Dillon & Preston* and *H. C. Holmes*, for appellant.

A witness may be cross-examined on all points. material to the issue.   Ireland v. Railroad, 44 N. Y. 426; Graham v. Larimer, 43 Pac. 286; Sharp v. Hoffman, 21 Pac. 846.   In determining the liability of the principal for the acts of his agent the question is, what authority was a third person dealing with the agent justified from the acts of the principal in believing was given to him? · Griggs v. Seldon, 58 Vt. 561; Walsh v. Insurance Co., 73 N. Y. 5; Robert v. People, 21 N. W. 319.   Where the facts are disputed, or such that different conclusions might be drawn from them, the question should be left to the jury.   Williams v. Railroad, 14 N. W. 97; Mares v. Railroad, 21 N. W. 5; Railroad v. Stout, 17 Wall. 663.   A buyer cannot offset a debt due from the agent against the demand for the purchase price by the principal.   Evans v. Waln, 71 Pa. St. 69; Graham v. Duckwall, 8 Bush. 12; Conable v. Lynch, 45 Iowa, 84; McBain v. Seligman, 58 Mich. 294; Story on Agency, § 413.

· *H. F. Fellows*, for respondent.

It is the duty of the court to direct a verdict when the proof is so predominating that a verdict against it would be set aside by · the court as contrary to the evidence.   Peet v. Insurance Co., 1 S. D. 462.   The court may direct a verdict for the defendant, though a motion for a non-suit may have been overruled.   Jacob v. Case, 1 S. W. 6.

KELLAM, P. J.   The facts in this case, as we understand them from the record before us, are about as follows:   The appellant is a manufacturer of and dealer in school furniture, located at Battle Creek, Mich.   The respondent, living at Plankinton, S. D., was a contractor for the building and furnishing of schoolhouses. J. D. & J. F. Bartow, also living at Plankinton, acted as agents

of appellant in selling furniture. Among other sales so made they sold a bill to respondent to put into a certain schoolhouse for the building and furnishing of which he had a contract. These sales were usually made directly to the school districts, and payment was generally made by school bonds or orders. This action was to recover for this bill of furniture so sold to respondent. There was no question of fact as to the receipt of the furniture by respondent. The contest was over the question of payment. At the close of the evidence the defendant moved the court to direct a verdict in his favor, for the reason that "there is no evidence to show that the defendant is indebted to the plaintiff in this action." This motion was allowed, and upon verdict so directed judgment was entered, and upon this ruling of the court the principal assignment of error is based. It is clear that upon the part of the plaintiff the indebtedness was sufficiently established, when it was shown that the furniture was delivered to and received by the defendant. The defendant then undertook to prove that he had fully paid for it. To do this he introduced evidence tending to show that he had made such payment to the agent Bartow. Whether payment to Bartow was payment to his principal depended, of course, upon the extent and scope of Bartow's agency. The contract under which this furniture was bought by defendant, and which he admits that he signed, contained these words: "Special Notice. All payments must be made directly to the Union School Furniture Company, and not to its agents." As against this, the testimony of agent Bartow strongly tended to show that, as a matter of fact, he did make collections on sales made by him; that such collections were received by plaintiff, thus ratifying his acts; and that this was known to defendant, Mason, before and at the time of his payment to him, (Bartow.)

Without stopping to inquire whether, upon all this evidence, it was a question for the court or the jury to determine the extent of Bartow's agency, it is evident that, at best, such evidence would only show Bartow's agency to do such acts as his principal had been in the habit of ratifying, to wit, collecting and remitting for goods sold by him. Bartow testified, in relation to the payment of this claim to him by defendant, Mason: "I think I testified

in my direct examination that he paid it in cash. It was an off-setting on accounts, however, between me and Mason to a certain extent. That wasn't cash to that extent." Now, conceding that, upon the facts shown, Mason was justified in understanding that Bartow was authorized to make collections, and that his principal would be and was bound thereby, such agency would not extend to offsetting mutual accounts between the agent and the debtor. When Bartow undertook to accept an account against himself as part payment of Mason's indebtedness to his principal, it did not bind his principal, unless his agency was broader than a general authority to make collections. Stewart v. Woodward, 50 Vt. 78; McCormick v. Keith, 8 Neb. 142; McCarver v. Nealey, 1 G. Greene, 360; Mechem, Ag. § 375. The amount of Mason's account against Bartow, thus set off against his indebtedness to plaintiff, does not appear, but, whether much or little, to that extent the claim of plaintiff against Mason was not thereby paid, and plaintiff would be entitled to recover such amount unless it is shown that Bartow had accounted for and paid the same to plaintiff; and this respondent's counsel characterizes as the "vital and decisive question in the case." He argues, however, that the evidence of both the Bartows is positive and uncontroverted to the fact that plaintiff had been paid the full amount of the claim; while the evidence of Preston, plaintiff's bookkeeper, that it had not been paid, rested wholly upon the fact that the plaintiff's books did not show such payment, and is therefore no substantial evidence of nonpayment.

We should be unwilling to hold that the account books of a commercial house, presumably kept honestly and in the usual way, did not afford some evidence of the nonpayment of a claim, where no credit or evidence of payment appears on such books; it being within the common knowledge of all that the primary use of such books is for the entry of items of debit and credit, so as to show the condition of each customer's account. Perhaps such negative evidence of nonpayment ought readily to yield to positive testimony of payment, but that is a question of fact, and not of law. We think the question of payment, upon the evidence up to this point, would have been for the jury; but there was more.

Bartow had made a number of sales of furniture for plaintiff, beginning in September, 1883. It is not easy for us to determine from the evidence just how this business was transacted, or how the payments were made. The furniture was generally paid for in school bonds, but it does not appear that, as between Bartow and the plaintiff, each transaction was settled up by itself, either with a requisite amount in bonds or in cash, but the contrary appears. Bartow testifies that in March, 1884, he went to Battle Creek, Mich., to settle his previous year's account with plaintiff, taking with him, as we understand, certain school bonds. As to what was said and done at this time he says: "I talked over the Mason deal when I was in Battle Creek in March, 1884; Mason had paid me in January, 1884. So he had paid me before I went to Battle Creek. The company said nothing to me about paying over the Mason deal when I was there. They didn't ask me to explain how it had been paid. I received a letter later from the plaintiff. * * * I turned over these bonds to a man who signed himself F. H. P. and the Union School Furniture Company. Question. When you answer that you turned over the bonds to F. H. P., what bonds do you mean? Answer. George township bonds." In another place, referring to these bonds, he says: "These bonds were turned over to the Union School Furniture Company, March 18, 1884, at Battle Creek. I don't want to be understood that I had a settlement with the company in Battle Creek at that time." Again, after speaking in detail of the several sales made for plaintiff, he testifies: "The total of the face of these bills is $6,064.65; the net cost to us, $5,850.62; of which there was turned over to these parties Bloomfield township bonds, $2,800; George township bonds, $1,000; Pleasant Grove township bonds, $2,000; cash in draft, $103.25,"—which, after deducting $52.31 not involved in this inquiry, leaves "a net balance due J. D. Bartow of 92 cents." With reference to these George township bonds, F. H. Preston, for plaintiff, testified that in March, 1884, he was head bookkeeper for the plaintiff. "I remember J. F. Bartow coming to my place of business in March, 1884. Bartow came for the purpose of settling his account, but I showed him that I was the only person in the office at the time that could do any

business with him, as the head men were out of the city, and I explained to Mr. Bartow that I could not make any settlement with him; that I had no authority whatever to do it. Mr. Bartow had a thousand-dollar, face value, George township bond, which he wanted to apply, he said, on his account; but I told him I had no authority to do that, but if he would leave the bonds I would give him a receipt for the same, but not on his account. * *. * I received these bonds from Mr. Bartow. I simply gave him a receipt for the bonds. I didn't place these bonds to any one's credit, because I had no authority to make any transaction whatever; simply received them as custodian. I so stated to Mr. Bartow. * * * He told me, if I remember rightly, that he wanted them applied, and I told him I could not tell him whether they would be applied that way or not. I had no authority to do so. I told him I would lay the matter before the proper authorities as soon as I could, and let them decide it. The Mason deal was not referred to at all. Question. How were those bonds finally applied,—do you know? (Defendant objects. Objection sustained.) Cross-examination: Q. These bonds he left to be turned over to the officers of the company. You turned them over? Answer. I did. Redirect: Q. When these bonds were turned over to the company, Mr. Preston, you may state if you know what application was made of them. (Defendant objects, and the objection is sustained.)" It seems to us that this examination was thus stopped by the court at the very point where it was most interesting and most material. We have attempted to show that, so far as this claim against defendant was adjusted between himself and the agent Bartow by application of defendant's account against Bartow, it was no payment as against plaintiff. Conceding Bartow's authority to the extent claimed, Mason's debt to plaintiff was still at least partially unpaid, unless plaintiff had received payment from Bartow. Whether it had received such payment depended upon what disposition was finally made of the George township bonds. If plaintiff kept them to apply on Bartow's account, then it had been paid, and a few cents over. If it declined to so accept them, and they were not so applied, then Bartow had not accounted to plaintiff for the amount of his account applied to

the Mason claim. Suppose the fact to be, and that this witness would have testified, that when he turned these bonds over to the officers of the plaintiff company in pursuance of the understanding between Bartow and himself, they had declined to so accept them, and had notified Bartow of such fact, and that the bonds were subject to his order. Would not such fact have been material in determining whether the transfer of the bonds constituted a *pro tanto* payment on Bartow's account, and consequently whether plaintiff's claim against defendant, Mason, was extinguished by payment by Bartow? It may be said that an inquiry as to what application was made of the bonds was not equivalent to an inquiry as to what disposition was made of them. This is technically true, but it was for defendant to establish the fact of payment. It was an affirmative defense. If he relied upon the transfer of these bonds to constitute payment, it was incumbent on him to show such facts concerning the transfer as would justify the jury in finding that such transfer was in fact intended as a payment, or the court in holding, as matter of law, that its legal effect was payment. We do not think the evidence as to the transfer of these bonds from Bartow to Preston, and from Preston to the officers of the plaintiff company, justified the court in holding that such transfer conclusively proved payment. To justify the court in directing a verdict for defendant, it must have held, as matter of law, either that under the evidence Bartow, as agent, was authorized to bind his principal, the plaintiff, by the settlement which he made with defendant, Mason, or that the transfer of the George township bonds in the manner described constituted a payment to plaintiff, and an application of the same on Bartow's account, neither of which it could rightly do. In directing a verdict for defendant upon this evidence we think the trial court erred, and the judgment is reversed, and the case remanded for a new trial. All the judges concur.