GRIFFIN *v.* WISE, administrator, *et al.*

1. Books are admissible in evidence to show that they do not contain a given entry.

2. Even if a subscribing witness to a deed can make an affidavit of probate when the original deed is not before him at the time the affidavit is made, the recording of such an affidavit, with a certified copy of the deed which has been theretofore improperly admitted to record, will not make such certified copy with the affidavit a registered deed within the meaning of the registry laws of this State.    If such an affidavit is sufficient probate of the original, it would authorize the record only of the original, and not of the copy.

3. When the language of an entry of levy upon an execution is capable of two meanings, one rendering the officer making the levy liable for a trespass and invalidating the sale made by him under the execution, and the other consistent with a complete discharge of duty on the part of the officer, thus making the sale by him regular and valid, the latter interpretation is to be adopted.

4. The evidence, though conflicting, authorized the verdict, and the court did not err in refusing to grant a second new trial.

Submitted May 1, — Decided June 6, 1902.

Equitable petition.    Before Judge Reagan.    Fayette superior court.    August 10, 1901.

*J. S. Boynton, F. D. Dismuke,* and *R. L. Berner,* for plaintiff.
*J. W. Wise* and *Hugh M. Dorsey,* for defendants.

COBB, J.    Griffin brought his petition against Obedience Cobb and others, alleging that he was the owner of a lot of land described in the petition, and that Leroy Cobb claimed to be the owner of the same as the purchaser at a judicial sale.    It was alleged that

the sale was illegal, for the reason that the execution was dormant, and that R. B. Shell, the defendant in the execution under which the sale was had, had no interest in the property as an individual or otherwise at the date of the judgment upon which the execution issued. The prayer of the petition was, that the deed to Leroy Cobb be canceled as a cloud upon the plaintiff's title, and that the sheriff be enjoined from dispossessing the plaintiff. The defendants filed an answer, in which they set up that the property in controversy had been seized under an execution against R. B. Shell, and was legally sold and bid off by Leroy Cobb, acting as the agent for his wife, Obedience Cobb, and that the sheriff had executed to Obedience Cobb a deed to the premises in controversy. It was alleged that R. B. Shell owned the property at the time of the levy, and that the same was subject to the lien of the judgment under which the sale was had. Pending the case Obedience Cobb died, and Wise, her administrator, was made a party to the case in her stead. At the trial it appeared that the plaintiff derived title through a deed from the administrators upon the estate of Daniel Shell, and that Daniel Shell acquired title by a deed from R. B. Shell. The defendant Obedience Cobb derived her title through a sheriff's deed which was founded upon an execution issued upon a judgment against R. B. Shell, as executor of Samuel Robinson, which provided that the same was to be satisfied out of the assets of the estate of Robinson in the hands of Shell, if any were to be found, and if none were to be found, then out of the property of R. B. Shell individually. The execution issued upon this judgment followed the same, and directed the sheriff to seize the property of the estate of Samuel Robinson, if any was to be found, and if none was to be found, then to seize the property of R. B. Shell individually, for the purpose of satisfying the execution. As has been seen, Obedience Cobb claimed that the property levied on was seized and sold as the property of R. B. Shell individually. It will thus be seen that both parties claim under a common grantor, R. B. Shell. The trial resulted in a verdict in favor of the defendants, and the plaintiff's motion for a new trial having been overruled, he excepted.

1. The court admitted in evidence, over the objection of the plaintiff, the tax-books for one year, to show that Daniel Shell did not return the property in controversy for taxation; and the tax-

books for several years, to show that Griffin did not return the property in controversy. The objection to this evidence was, that the books were not admissible to prove what was not in them, but were only admissible for the purpose of proving their contents. The contents of a book or writing, of course, can not be proved except by the production of the book or writing itself, or a duly certified copy of the same in those cases where the law recognizes a certified copy as original evidence. Even in such cases an officer who is authorized to certify to the contents of the book or writing can not certify as to what is not contained in the book or writing. In such a case what the book or writing contains can be proved by the certificate of the officer who is the custodian of the book or writing. But such officer has no authority to certify that a given entry is not contained in the book or writing, and a certificate from him to this effect is not evidence of the fact therein stated. When it becomes material, as it often does, to prove that a paper does not appear of record, this fact can be proved by any one who has examined the records where the paper would appear if it had been recorded, and who will swear to the fact of the examination of the record and that the paper in question does not appear to have been recorded. The officer who is the custodian of the records may himself be a witness to the fact of the absence of the paper from the record. . While the method above indicated can be followed in any case, it is not the exclusive method of proving that the paper does not appear upon the records where the law would permit it to be recorded or require it to be recorded, in the event the record of the paper was in existence. A book which would contain an entry if such an entry existed is admissible for the purpose of examination by the court or jury to show that such entry is not in existence. If the objection had been made that the tax-books themselves were not admissible for any purpose, and that if it was sought to prove that a certain return was not upon the same there should be a certified copy of the books, then this objection would have been well taken. But no objection was made to the use of the original books, the sole objection being that the books were not admissible to prove what was not in them. This objection was not well taken. While it was not the only way of proving this fact, there is no other more satisfactory method of showing that a book does not contain a given entry or the record of a

given paper. See, in this connection, *Hines* v. *Johnston*, 95 *Ga.* 629 (3); *Greer* v. *Ferguson*, 104 *Ga.* 552 (2); *Shivers* v. *State*, 53 *Ga.* 149; *Daniel* v. *Braswell*, 113 *Ga.* 372.

2. The plaintiff offered in evidence what purported to be a certified copy of a deed from the administrators of the estate of Samuel Robinson to R. B. Shell, to the premises in dispute. There was proof that the original had been lost. It appeared that the deed was executed in the presence of two witnesses, neither of whom was an officer authorized by law to attest deeds, and it did not appear that the deed had been acknowledged by the grantor or probated by the witnesses before an officer authorized by law to take an acknowledgment of probate. There appeared upon the certified copy what purported to be an affidavit of probate by one of the witnesses before a notary public, which was dated nearly twenty years after the date of the deed and more than fifteen years after the deed was recorded. After this probate was entered upon the copy deed, it appears that the deed was again recorded. The court rejected the copy deed, and held that no proof of its contents would be admissible until the execution of the original deed was proved. This ruling is assigned as error, for the reason that the probate by one of the witnesses, even after the record, was sufficient to make the record good, especially when it appeared that the witness made a proper affidavit of probate on the copy deed offered in evidence; and also for the reason that the deed was admissible at least as color of title. It is well settled that before secondary evidence of the contents of an alleged lost deed can be competent, it must be shown not only that the original once existed, but that it was properly executed. *Garbutt Lumber Co.* v. *Gress Lumber Co.*, 111 *Ga.* 821, and cases cited; *Smith* v. *Smith*, 106 *Ga.* 303, s. c. 112 *Ga.* 351; *Greer* v. *Young*, 113 *Ga.* 120. Counsel for plaintiff in error do not controvert the existence or the correctness of this rule, but claim that in the case of a lost deed which has been recorded, although not entitled to be recorded, for want of a proper acknowledgment or probate by a witness, a witness to the deed can make an affidavit of probate upon a certified copy of the deed; and that this will be sufficient to authorize the clerk to record again the certified copy, and that when recorded this certified copy stands upon the same footing as the original. It is said that a witness can swear to the execution of a deed which is not before him at the

time the affidavit is made, and that if he can truthfully swear to the date, the names of the parties, etc., an affidavit by him to all of the essential facts necessary in an affidavit of probate would be valid, notwithstanding it is not attached to the deed, if the deed was not in the hands of the witness or accessible to him at the time he made the affidavit. This all may be true, and upon the original deed being delivered to the clerk with the affidavit referred to, where the contents of the affidavit are such as to clearly indicate that the clerk would be authorized to record the deed, he would have authority to place the deed on record. The present case does not, however, present such a state of facts. When the original deed was presented to the clerk, it was not in a condition to be legally recorded; it was not attested by an officer authorized to attest deeds; it was not acknowledged by the grantor in the presence of such an officer; neither was there attached to it or accompanying it an affidavit of one of the witnesses showing the facts necessary to be shown in a proper affidavit of probate. The record of the deed under such circumstances was unauthorized by law, and therefore amounted to nothing. The deed for all purposes stands as if there had not been any attempt to record it. Even if the affidavit of probate which appears in the present case would be in other respects sufficient to authorize the record of the deed therein referred to, it could be used only for the purpose of authorizing the record of the original deed, and all that was recorded after this affidavit was made was a copy of the illegally recorded deed. The original has never been recorded since the affidavit of probate was made. A certified copy of the paper which was illegally recorded has been recorded with this pretended probate. Under such circumstances the court did not err in rejecting the certified copy of the deed which was offered in evidence. When a deed is shown to have been lost, a certified copy of the deed is admissible in evidence to prove the existence, genuineness, and contents of the original. Civil Code, § 3630; *Holtzclaw* v. *Edmondson*, 114 *Ga.* 171. What was offered in evidence in the present case was a certified copy of a deed which had been illegally and improperly placed upon the registry, and there is no law authorizing or permitting the introduction in evidence of such a paper. If a copy of the deed had been established by a judgment of the superior court, and the original deed before its loss had been properly recorded, then a certified copy of

the judgment establishing the deed would have been admissible without the production of the subscribing witnesses. See *Leggett* v. *Patterson*, 114 *Ga.* 714. In such a case the judgment establishing the lost deed dispenses with the necessity of proof of the existence of the original, and the original having been properly recorded dispenses with the necessity of proof of its execution. In the present case the evidence at most simply showed the existence of the original deed. The subscribing witnesses were not produced, the orginal had not been legally recorded, the certified copy of this illegally recorded paper amounted to nothing, the original had not been in the hands of the clerk or attempted to be placed upon the records in any way after the alleged affidavit of probate had been executed, and what purported to be a certified copy of the original was not admissible and was properly rejected.

3. The judgment, upon which the execution under which the sheriff sold and conveyed the property to Obedience Cobb was issued, was, as has been seen, a judgment against Shell as executor of the will of Samuel Robinson, deceased, to be satisfied of the property of the estate of Robinson, if any was to be found, and if none was to be found, then of the property of the executor individually, and, as has also been seen, the execution followed this judgment. The levy was upon the property in controversy, and recited that the property was "levied on as the property of R. B. Shell, ex., etc., Samuel Robinson," and that the same had been levied upon by virtue of an execution in favor of Obedience Cobb against "R. B. Shell, ex., etc." The sheriff's deed recited that the property had been seized "as the property of the said R. B. Shell, executor of Samuel Robinson, deceased," and conveyed to the purchaser "all the estate, right, title and interest, claim and demand of the said R. B. Shell, executor of Samuel Robinson, deceased, in law, equity, or otherwise," etc., the same to be held by the purchaser "in as full and ample manner as the said R. B. Shell, as executor of Samuel Robinson, deceased, or his heirs and assigns, did hold and enjoy," etc., the same. Obedience Cobb claimed title as having been derived by the seizure of the property of R. B. Shell, individually; and therefore, unless the evidence authorizes a finding that she derived title in this way, a verdict in her favor was unauthorized. The determination of the question whether when the sheriff made the levy above referred to he thereby seized the property as the

property of the estate of Samuel Robinson, or as the property of Shell individually, depends upon the proper construction to be placed upon the words of the levy above quoted. It has been held that the levy must be construed in connection with the execution and judgment, and hence that where upon an execution de bonis testatoris, rendered against an administrator, a sheriff made an entry which stated that he knew of no property of the defendant upon which to levy the execution, the entry must be construed as one that the sheriff knew of no property of the estate in the hands of the administrator to be levied upon. *Gibson* v. *Robinson,* 90 *Ga.* 756 (4). In such a case the execution authorized the seizure only of the property of the estate, and the entry of the sheriff was to be construed in the light of this fact, and also with the presumption in his favor that he discharged the duty incumbent upon him, that is, to search for the property of the estate in the hands of the administrator, and not for the property of the administrator personally; the well-settled rule being that the return of an officer, when ambiguous, is to be so construed as to make it consistent with the proper discharge of the duty imposed upon him by law, if the return by reasonable intendment and construction can be made to bear this interpretation. The decision just cited was followed in the case of *Ferguson* v. *Hardware Co.*, 92 *Ga.* 531, where it was held: " Where an execution against an administratrix directs the seizure, not of her individual property, but of the property of her intestate in her hands to be administered, an entry of levy made by the proper officer on the execution, to the effect that he had levied on certain described land as the property of the administratrix, should be construed as meaning the property of the estate which she represented, and not her own property individually. The levy, though informally entered, is a sufficient exercise of the power conferred by the writ."

The principle deducible from the rulings just referred to is, when applied to levies by a sheriff upon land, that the levy shall be so construed as to be consistent with a proper discharge by the officer of the duty imposed upon him by law, so as to render effective his official acts. If the language of the levy is ambiguous or doubtful in its meaning, and capable of two constructions, one of which would vitiate the sale and invalidate the title of the purchaser and, it may be, lay the officer subject to an action of trespass, and the other

interpretation being such as to be consistent with the discharge of duty by the officer in the manner prescribed by law, and as a result of such a discharge of duty the sale made by him would be valid and the purchaser would obtain a title to the property seized under the execution, then the latter interpretation must be placed upon the levy.   Applying this principle to the facts of the present case, we find an execution which would have authorized the sheriff to seize either the property of the estate of Robinson in the hands of Shell as executor, or the property of Shell individually.   The levy does not in terms state that the property was seized as the property of the estate of Robinson; the only words in the levy that might be held to indicate an intention on the part of the sheriff to seize the property of the estate of Robinson are the words "executor, etc.," following the name of Shell.   Ordinarily such words are merely descriptive of the person, and do not indicate the capacity in which the person is proceeding or proceeded against.   *Wynn* v. *Irvine*, 109 *Ga.* 287, 288, and cases cited.   If this execution had been one against the executor in his representative capacity only, the words which are ordinarily words of description following the name of the executor would, in order to save the levy, have been construed to show an intention on the part of the officer to seize the property of the estate of the testator.   In the absence of anything constraining the courts to place such a construction upon the words of the levy, the words would ordinarily be so construed as to make the levy a seizure of the individual property of Shell.   As the sheriff was authorized under the execution to seize the individual property of Shell, and as the language of the levy is sufficient for this purpose, and as it appears that in order to uphold the levy as valid it is necessary to construe the same to be a seizure of Shell's individual property, and as any other construction would not only invalidate the sale and defeat the title of the purchaser, but would, under the facts of the present case, also show the sheriff guilty of a trespass, the levy is to be construed by giving the words their ordinary meaning and applying the general rule in reference to words of description following the name of the individual, and the ambiguity in the levy is to be construed in favor of upholding the officer and validating the sale made by him.   When so construed the evidence authorized a finding that the sheriff seized the prop-

erty of R. B. Shell individually, and that whatever interest he had in the property passed to Obedience Cobb under the sheriff's deed.

4. The only remaining question to be considered is whether the verdict was authorized by the evidence. If Daniel Shell was the owner of the property at the time of his death, having derived title during his life from R. B. Shell, and the plaintiff derived title at an administrator's sale upon which there is no attack, then the plaintiff was entitled to prevail, for the reason that Obedience Cobb claimed under R. B. Shell; and unless she proved that her title derived through the sheriff's sale of the property as the property of R. B. Shell was superior to the deed from R. B. Shell to Daniel Shell, made long before the sheriff's sale, then the verdict in her favor was unauthorized. The defendant contended that the evidence authorized a finding that the deed from R. B. Shell to Daniel Shell was made to secure a debt which had been fully paid off before the date of the administrator's sale, and that Griffin, the plaintiff, when he purchased at the administrator's sale, had full knowledge of all of these facts. If this was true, the estate of Daniel Shell had no interest whatever in the property, and nothing passed to Griffin, who claims under that sale. Upon both of the questions of fact above referred to the evidence was conflicting, and probably on the question of notice the preponderance was against the verdict. There was, however, evidence from which the jury could find that Griffin had full notice when he bought that the deed from R. B. Shell to Daniel Shell was given to secure a debt, and that the same had been fully paid off before the date of the administrator's sale. This is the second verdict in favor of the defendants. The present case was begun in 1891. It was the final termination of a controversy in litigation prior to 1873. The litigation has survived two of the original counsel in the case, and none of the original counsel appeared at the trial in the court below. We think the time has come when this litigation can be properly ended. The verdict having met with the approval of the trial judge, his judgment overruling the motion for a new trial will not be disturbed.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concurring, except Lewis, J., absent.*