[Crim. No. 4069. First Dist., Div. Two. Mar. 14, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT ANGELO TORRES, Defendant and Appellant.

James M. Feeley, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Robert B. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

KAUFMAN, P. J.—On this appeal from a judgment rendered on a jury verdict finding him guilty of grant theft, in

violation of section 484 of the Penal Code, the appellant urges prejudicial error in the admission of certain evidence and the inferences drawn therefrom.

Viewing the evidence in a light most favorable to the respondent, a résumé thereof taken from the record shows the following facts: the complaining witness, one Gerald Butler, testified that on Thursday, July 6, 1961, he was at his father's used car lot on Alum Rock Avenue in San Jose, where he regularly worked. Sometime during the afternoon, the appellant and a companion looked at a 1956 Cadillac. Appellant told Butler he was from Eureka, the operator of a small trucking line between Eureka and Los Angeles, and stated he intended to buy the car for his sister-in-law. After taking the car for a test drive, appellant told Butler he wanted to show the car to his sister-in-law, Mrs. Ruby Lint, who lived at an address about four or five miles away. Butler did not ask the appellant for identification or a driver's license but merely inquired whether the appellant was able to buy the car. Appellant assured Butler that he would pay cash for the car and showed him a piece of paper with the name of Ruby Lint and her address. Butler gave the appellant permission to take the car to his sister-in-law's address and the appellant drove away from the lot.

Butler testified that it was not his practice to force identification from customers before letting them try out a car. No definite time limit was set for the return of the car but it was understood the appellant would bring it right back. About 5:30 p. m. appellant phoned Mr. Butler and said his sister-in-law liked the automobile and he was going to take her for a ride. Butler told the appellant to go ahead and then told him to bring the car right back to the lot. About an hour later, the appellant called Butler again and said he wanted to go to Watsonville to show the car to his father. Butler refused permission and the appellant said: ''Okey, Red, I'll be right there.''

However, the appellant did not return to the lot that day but called Butler at 9:30 the next morning. The appellant explained that he had had to work the night before driving a truck to Gilroy. Butler told the appellant he had not had the permission to keep the car overnight and wanted him to return the car immediately. The appellant arrived at the lot about 9:40 a. m. and stated he intended to buy the automobile. After inquiring about the price, he said he had a checking account at the Crocker-Anglo Bank in Eureka but was going

to close it out the following Tuesday. Butler told the appellant he could not accept a check on that basis. The appellant then said he would go downtown and cash the check at the Crocker-Anglo branch. At this time, Butler was drawing up a car order for the sale of the Cadillac. Butler erroneously dated the order July 6. The order showed a Watsonville address for the appellant and was signed by him; the yellow carbon copy of the order was left on Butler's desk under the ash tray, while the duplicate white copy remained in the book. Only Butler and the appellant and one Hill, who was trying to sell some car tools, were present when the order was written out. Even though the appellant did not make a deposit, Butler authorized him to take the car to the bank and return. Butler expected the appellant to be back about 10:30 a. m., but the appellant did not appear.

When Butler attempted to report the missing car that day, the police would not allow him to make a report and told him to file a complaint through the district attorney's office. The district attorney's office informed him he would have to wait for five days to file. Butler filed the complaint on July 11, and on the same date discovered that the yellow carbon copy of the sale order was missing; he did not recall removing the copy from beneath the ash tray where he had initially put it on the preceding Friday.

Butler next saw the yellow copy of the car order at the appellant's preliminary examination. At this time, the word "paid" had been written across the yellow copy in a large fancy hand. The original white copy was not so marked. Butler testified he had never written "paid" across the copy of the order but that whenever money is accepted in an automobile deal, a receipt is made out. A copy of each receipt is retained in the receipt book and the carbon given to the customer. The receipt book was admitted and Butler testified there was no evidence of any receipt made out to the appellant on or about the 6th or 7th of July or a receipt to anyone for $1,348.80, the amount of the sale. He also testified that the report of sale for the California Department of Motor Vehicles and the pink slip had not been executed in connection with the sale of the Cadillac to the appellant; that the average volume on his father's lot was about one car per day; that the amount of an average sale was about $500; and that the majority of the sales were not for cash but were financed.

Butler did not hear of the car again until July 11 when

he was notified by the police that the car had been impounded by the sheriff's department in Morro Bay. Butler went to Morro Bay to pick up the car on July 14 and drove it back to San Jose. The appellant was arrested on July 14 in Morro Bay.

The assistant manager of Crocker-Anglo National Bank in San Jose testified that Crocker-Anglo has one branch in Eureka. At the request of the police by bank teletype, he asked the Eureka branch whether any person with the name of appellant had an account in the Eureka branch. After identifying the teletype message he had sent to the Eureka branch and the teletype received in reply, he testified the reply indicated that the Eureka branch could not locate any account in the name of the appellant.

The appellant admitted three prior felony convictions for auto theft but could not remember any others. Subsequently, the prosecution introduced evidence of a fourth felony conviction for auto theft as well as two additional felony convictions for forgery (Pen. Code, § 476a) and embezzlement (Pen. Code, § 503).

No contentions are raised relating to the sufficiency of the evidence. ▪▪▪ The essential elements of the crime here charged are: (1) taking of the thing which is the subject matter of the crime from the owner into the possession of the defendant without the consent of the owner or a claim of right; (2) asportation of the subject matter; (3) the subject matter taken and carried away must be the property of another; and (4) the taking and carrying away must be with an intent to deprive the owner of his property wholly and permanently (*People* v. *Cannon,* 77 Cal.App.2d 678 [176 P.2d 409]). Here, Butler's ownership, appellant's asportation, as well as his presence at the scene of the offense, were admitted. The only elements which remained to be proved were Butler's lack of consent and the appellant's unlawful intent. The proof of both of these elements depended on whether the jury believed the appellant's version of the facts or Butler's. Appellant argues that in this state of the evidence, the trial court erred to his prejudice by admitting into evidence the receipt book, the teletype inquiries and reply from the banks, and then permitting the witnesses to draw negative inferences from these items of hearsay evidence.

The record reveals that the receipt book was admitted pursuant to section 1953f of the Code of Civil Procedure (Uniform Business Records as Evidence Act) which provides:

"A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

Appellant first argues that the receipt book was erroneously admitted because the prosecution failed to lay the proper foundation by the testimony of the custodian of the book as to how the records were kept, etc. However, the appellant admits that his trial counsel (who is not his counsel on this appeal) stipulated to the admissibility of the receipt book. There is no question that a defendant may stipulate to the introduction of evidence to which he might have objected and which might otherwise be inadmissible (*People* v. *Zavaleta,* 182 Cal.App.2d 422 [6 Cal.Rptr. 166]; *People* v. *Ah Ton,* 53 Cal. 741). Appellant, however, argues that this stipulation must be disregarded because his counsel agreed to the stipulation for tactical purposes only. But, we cannot be concerned with the mental processes employed by counsel in selecting his trial tactics. Having consented to the admission of the hearsay evidence at the trial, appellant may not object to it on appeal (*Buchanan* v. *Nye,* 128 Cal.App.2d 582 [275 P.2d 767]). Appellant next argues that receipts are not admissible. There is no merit in this argument as it is well established that in an action between the parties to a transaction, receipts are not only admissible, but proof (*Plonley* v. *Reser,* 178 Cal.App.2d Supp. 935, 938 [3 Cal.Rptr. 551]; 20 Am.Jur. Evidence § 947, p. 799). Furthermore, section 1953f of the Code of Civil Procedure places a broad discretion in the trial court which will not be disturbed on appeal (*Richmond* v. *Frederick,* 116 Cal.App.2d 541 [253 P.2d 977]).

Appellant's major contention is that even if the receipt book was properly admitted, pursuant to section 1953f of the Code of Civil Procedure, for whatever affirmative evidence it contained, the trial court clearly erred in permitting the witness to draw a negative inference from an entry of a self-serving nature. Appellant argues that the receipt book was erroneously adduced to prove a negative fact. For his argument, appellant relies on *Lewis* v. *McNeal,* 58 Cal.App. 70

[207 P. 1021][1] for the rule that books of account are never deemed evidence to rebut a presumption by showing there is nothing contained in them in reference to the claim set up by the adverse party. This case and *Kerns* v. *McKean*, 76 Cal. 87 [18 P. 122], not cited by the appellant, predate the adoption of section 1953f and the related provisions of the Uniform Business Records as Evidence Act (Code Civ. Proc., §§ 1953e-1953h, added by Stats. 1941, ch. 482, § 1, p. 1788).

The purpose of this act was to enlarge the operation of the business records exception to the hearsay rule, by liberalizing the foundational requirements of the common law (*Thompson* v. *Machado*, 78 Cal.App.2d 870 [178 P.2d 838]; *Richmond* v. *Frederick, supra*). In this state, the Uniform Act has been given a particularly liberal construction, which dispenses with the requirement of the originality of the entry (*Loper* v. *Morrison*, 23 Cal.2d 600 [145 P.2d 1]; 17 A.L.R.2d 235; 35 Cal.L.Rev. 434). Thus, business record decisions made before the adoption of the Uniform Act are not controlling (*Thompson* v. *Machado, supra*), particularly when they relate to the exclusion of evidence (Witkin, Cal. Evidence, § 284(c), p. 322).

The question of whether or not evidence of the fact that the receipt book did not disclose the existence of a receipt issued to the appellant was evidence of the fact that there was no such receipt, has not been decided in this state, since the adoption of the Uniform Act. The only related case we have been able to find is *People* v. *Caldwell*, 55 Cal.App.2d 238 [130 P.2d 495], a prosecution for forgery of an insurance broker's name. The broker in question was permitted to testify that he had not authorized the defendant to sign his name and that he had not signed his name to the forged certificate.

A similar view, that the absence of an entry in a regularly kept business record, is an indication that the fact did not occur, had been adopted in many other jurisdictions, before the Uniform Act (*Union School Furniture Co.* v. *Mason* (1892) 3 S.D. 147 [52 N.W. 671]; *State* v. *McCormick* (1896) 57 Kan. 440 [46 P. 777, 57 Am.St.Rep. 341]; *Sharp* v. *Pawhuska Ice Co.* (1923) 90 Okla. 211 [217 P. 214]; *Eisminger* v. *Mitchell* (1937) 181 Okla. 333 [73 P.2d 862]; *Klein* v. *F. W. Woolworth Co.* (1932) 309 Pa. 320 [163 A. 532]; *Woodward* v. *Chicago, M. & St. P. Ry. Co.* (8 Cir. 1906) 145 F. 577 [75 C.C.A. 591]; *Knapp* v. *Day* (1893) 4 Colo.App. 21 [34 P.

[1]*In re Kennedy*, 104 Cal. 429 [38 P. 93], cited by appellant on this issue, is not in point.

1008]; *Griffin* v. *Wise* (1902) 115 Ga. 610 [41 S.E. 1003])
although the decisions are not entirely in accord (*Shreve* v.
*United States* (9 Cir. 1935) 77 F.2d 2; *Veneri* v. *Draper* (4
Cir. 1927) 22 F.2d 33; *Zurich* v. *Wehr* (3 Cir. 1947) 163
F.2d 791). The Uniform Act provision, Code of Civil Pro-
cedure, section 1953f, does not settle the question, and as a
result the decisions are not clear whether such an extension
of the regular entries provision is allowable without a special
statute. [2](McCormick on Evidence (1954 ed.) ch. 32, § 289,
pp. 608-609).

The primary purpose of admitting evidence of any char-
acter in any case, is to arrive at the truth in controversy.
Hence, if a business record is otherwise admissible under sec-
tion 1953f, we see no reason why it should not be equally as
admissible to disprove an affirmative as to prove an affirma-
tive, just as competent to prove the falsity of a fact affirmed
as to prove the truth of the fact affirmed. We are unable to
conceive of any kind of evidence which does not, in a measure,
partake of both an affirmative and negative character. If it
proves an affirmative, it thereby logically disproves the re-
verse. It is this logic of the situation which explains the
older authorities mentioned above, as well as *People* v. *Walker*,
15 Cal.App. 400 [114 P. 1009], a prosecution for making and
passing and uttering a fictitious check. In the Walker case,
the business records of the bank in question were admitted
and a bank employee allowed to testify that these records
showed that one Robert D. Metcalf (the fictitious name the de-
fendant had signed to the check) did not have an account
there. This court held that the evidence was admissible as
prima facie evidence that the check was fictitious. We
think that this case, which despite its early date, is in
full accord with the liberalizing provisions of section 1953f,
is good law, and still the law of this state. It fits perfectly into
the various decisions under the statute, and is in accord with
the rule that the fact that a business record is self-serving
does not make it inadmissible but is merely one fact for the
jury to consider in weighing its effect (*Jensen* v. *Traders &
Gen. Ins. Co.*, 141 Cal.App.2d 162, 164 [296 P.2d 434];
*Gallup* v. *Sparks-Mundo Engineering Co.*, 43 Cal.2d 1, 8
[271 P.2d 34]).

---

[2]Of the 25 states which have adopted the Uniform Act (9A U.L.A.
297), Texas has enacted a special statute, Laws 1951, ch. 321; Michigan,
which has not adopted the Uniform Act, also has a special statute,
Comp. Laws, § 14207.

We conclude, therefore, that the trial court properly permitted Butler to testify that his business receipt book did not show a receipt issued to the appellant.

 The final argument on appeal is that the trial court erred in admitting the teletype message from the San Jose bank to the Eureka branch inquiring whether any person with his name had an account. Respondent here concedes that these messages were perhaps erroneously admitted as the reply from Eureka was hearsay. However, the real question is whether the admission of these messages prejudiced the appellant. Appellant argues that this admission so prejudiced his case in the eyes of the jury that the judgment of conviction must be reversed. We cannot agree. The entire case hinged on whether the jury believed that the appellant or the complaining witness was telling the truth. Butler and appellant's former mother-in-law both testified that the appellant had mentioned an account in a Eureka bank. The appellant flatly denied these statements and further denied ever having any account at the bank. Thus, it would appear that the teletype messages are in no way inconsistent with the appellant's defense and did not harm the appellant but rather aided him since they appear to substantiate his version of the facts. We conclude therefore that although error, the error was minimal and in no way prejudicial to the appellant.

Judgment affirmed.[3]

Shoemaker, J., and Agee, J., concurred.

A petition for a rehearing was denied March 26, 1962, and appellant's petition for a hearing by the Supreme Court was denied May 9, 1962.

---

[3]No motion for a new trial was ever made.